UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO.: 3:19-CV-279-RGJ

DEAN NORDMAN,                                                                    PLAINTIFF
by and through his Attorney in Fact,
HELEN A. NORDMAN

v.

THE EVANGELICAL LUTHERAN                                              DEFENDANTS
GOOD SAMARITAN SOCIETY, INC.
 d/b/a THE GOOD SAMARITAN SOCIETY –
JEFFERSONTOWN
d/b/a THE GOOD SAMARITAN CENTER

and

CHRISTINE WIDEMAN, in her capacity as Administrator
of The Good Samaritan Society – Jeffersontown

and

JOHN DOES 1 through 3,
UNKNOWN DEFENDANTS

## COMPLAINT WITH JURY DEMAND

Comes the Plaintiff, Dean Nordman, by and through his Attorney in Fact, HELEN A. NORDMAN, and for this cause of action against Defendants, The Evangelical Lutheran Good Samaritan Society, Inc. d/b/a The Good Samaritan Society – Jeffersontown d/b/a The Good Samaritan Center; Christine Wideman, in her capacity as Administrator of The Good Samaritan Society – Jeffersontown; and John Does 1 through 3, Unknown Defendants states:

1.      Dean Nordman is, and was at all relevant times herein, a resident of Jefferson County, Kentucky.

2.      Helen A. Nordman serves as the Attorney in Fact for Dean Nordman.

3.      Upon information and belief, Dean Nordman was admitted as a resident of The Good Samaritan Society – Jeffersontown, located at 3500 Good Samaritan Way, Jeffersontown, KY 40299, (hereinafter sometimes referred to as "the facility"), on or about October, 2017, and except for hospitalization, remained there until on or about April 2018.

4.      Defendant The Evangelical Lutheran Good Samaritan Society, Inc. d/b/a The Good Samaritan Center d/b/a The Good Samaritan Center – Jeffersontown is a non-profit foreign corporation organized under the laws of North Dakota with its principal office located at 4800 West 57th St., Sioux Falls, SD 57108, and is authorized to do business in the Commonwealth of Kentucky. Upon information and belief, at times material to this action, Defendant The Evangelical Lutheran Good Samaritan Society, Inc. owned, operated, managed, controlled, and/or provided services for The Good Samaritan Center – Jeffersontown. Upon information and belief, at times material to this action, Defendant The Evangelical Lutheran Good Samaritan Society, Inc. was the "licensee" of the facility. Under the laws and regulations promulgated and enforced by the Cabinet for Health and Family Services, as licensee of the facility, Defendant The Evangelical Lutheran Good Samaritan Society, Inc. was legally responsible for that facility and for ensuring compliance with all laws and regulations related to the operation of the facility. The causes of action made the basis of this suit arise out of such business conducted by said Defendant The Evangelical Lutheran Good Samaritan Society, Inc. in the ownership, operation, management, control, licensing, and/or services provided at the facility during the residency of Dean Nordman. The agent for service of process for Defendant The Evangelical Lutheran Good Samaritan Society, Inc. is through the CT Corporation System, 306 West Main Street, Suite 512, Frankfort, KY 40601.

5. Upon information and belief, Defendant Christine Wideman was the administrator of The Good Samaritan Society – Jeffersontown during the residency of Dean Nordman. The causes of action made the basis of this suit arise out of the administration of the facility by Christine Wideman. Defendant Christine Wideman may be served with process at the addresses shown above in this Complaint.

6. Defendants John Does 1 through 3 are entities and/or persons, either providing care and services to Dean Nordman, or directly or vicariously liable for the injuries of Dean Nordman. Plaintiff is currently unable to identify these Unknown Defendants, despite diligent efforts, but may discover such identities upon further investigation. Said Defendants are named insofar as their acts and/or omissions were negligent, tortious or otherwise wrongful with respect to the care, treatment and services to Dean Nordman during his residency at The Good Samaritan Society – Jeffersontown.

7. Whenever the term "Nursing Home Defendant" is utilized within this suit, such term refers to The Evangelical Lutheran Good Samaritan Society, Inc. d/b/a The Good Samaritan Society – Jeffersontown d/b/a The Good Samaritan Center.

8. Whenever the term "Administrator Defendant" is utilized within this suit, such term refers to Christine Wideman.

9. Whenever the term "Defendants" is utilized within this suit, such term collectively refers to and includes all named Defendants in this lawsuit.

10. Defendants controlled the operation, planning, management, budget and quality control of the facility. The authority exercised by Defendants over the facility included, but was not limited to, control of marketing, human resources management, training, staffing, creation and implementation of all policy and procedure manuals used by the facility, federal and state

reimbursement, quality care assessment and compliance, licensure and certification, legal services, medical supply services, and financial, tax and accounting control through fiscal policies established by Defendants.

11. Jurisdiction and venue are proper in this Court.

## FACTUAL ALLEGATIONS

12. The Plaintiff re-alleges and incorporates by reference the allegations in every paragraph heretofore stated as if fully set out herein.

13. Upon information and belief, Dean Nordman was looking to Nursing Home Defendant for treatment of his total needs for custodial, nursing, and medical care and not merely as the situs where others not associated with the facility would treat him.

14. At all relevant times mentioned herein, Nursing Home Defendant owned, operated, managed, controlled and/or provided services for The Good Samaritan Society – Jeffersontown, either directly or through a joint enterprise, partnership or the agency of each other and/or other diverse subalterns, alter egos, subsidiaries, governing bodies, agents, servants or employees.

15. Nursing Home Defendant is directly or vicariously liable for any acts and omissions by any person or entity, directly or indirectly controlled, including any governing body, officer, employee, ostensible or apparent agent, partner, consultant or independent contractor, whether in-house or outside individuals, entities, agencies or pools.

16. Nursing Home Defendant failed to discharge its obligations of care to Dean Nordman, and in so failing, displayed a conscious disregard for his rights and safety. At all times mentioned herein, Nursing Home Defendant, individually and/or through its corporate officers and administrators, had knowledge of, ratified and/or otherwise authorized all of the acts and omissions that caused the injuries suffered by Dean Nordman, as more fully set forth below. Nursing Home

Defendant knew that this facility could not provide the minimum standard of care to the weak and vulnerable residents of The Good Samaritan Society – Jeffersontown, including Dean Nordman.

17. Due to the wrongful conduct of Nursing Home Defendant, Dean Nordman suffered accelerated deterioration of his health and physical condition beyond that caused by the normal aging process, including, but not limited to, the following: poor hygiene, malnourishment, weight loss, physical abuse and medication errors.

18. Dean Nordman also suffered unnecessary loss of personal dignity, extreme pain and suffering, degradation, mental anguish and disability, all of which were caused by the wrongful conduct of Nursing Home Defendant as alleged below.

19. The injuries described in this Complaint are a direct and proximate result of the acts or omissions set forth herein, singularly or in combination. As a result of these injuries, Dean Nordman's health deteriorated and he required medical treatment.

## CAUSES OF ACTION
## COUNT I – NEGLIGENCE

20. The Plaintiff re-alleges and incorporates by reference the allegations in every paragraph heretofore stated as if fully set out herein.

21. Nursing Home Defendant owed a non-delegable duty to Dean Nordman to provide the custodial care, services and supervision that a reasonably careful nursing home would provide under similar circumstances.

22. Upon information and belief, Nursing Home Defendant knowingly developed and maintained staffing levels at the facility without regard for patient acuity levels or the minimal time to perform the essential functions of providing care to Dean Nordman.

23. Nursing Home Defendant negligently failed to deliver care, services and supervision, including, but not limited to, the following acts and omissions:

(a) Failure by the members of the governing body of the facility to discharge their legal and lawful obligation by:

    (1) ensuring that the rules and regulations designed to protect the health and safety of the residents, such as Dean Nordman, as promulgated by the Cabinet for Health and Family Services, Division of Long Term Care;

    (2) ensuring compliance with the resident care policies for the facility; and

    (3) ensuring that appropriate corrective measures were implemented to correct problems concerning inadequate resident care;

(b) Failure to develop, implement and follow policies to assist Dean Nordman in attaining and maintaining the highest level of physical, mental and psychological well-being;

(c) Failure to maintain all records on Dean Nordman in accordance with accepted standards and practices;

(d) Failure to provide the minimum number of qualified personnel to meet the total needs of Dean Nordman;

(e) Failure to provide adequate nursing and other staff that was properly staffed, qualified and trained;

(f) Failure to ensure that Dean Nordman received adequate and proper custodial care;

(g) The failure to maintain all records on Dean Nordman in accordance with accepted standards and practice that were complete, accurately documented, readily accessible, and systematically organized with respect to his diagnosis, treatment, and appropriate care plans of care and treatment;

(h) Failure to monitor or increase the number of nursing personnel at the facility to ensure that Dean Nordman:

    (1) received timely and accurate care assessments;

    (2) received prescribed treatment and medication;

    (3) received appropriate diet and nutrition;

    (4) received necessary supervision; and

    (5) received timely intervention due to significant changes in condition;

(i) Failure to have in place adequate guidelines, policies and procedures for the facility and to administer those policies through enforcement of any rules, regulations, by-laws or guidelines;

(j) Failure to take reasonable steps to prevent, eliminate and correct deficiencies and problems in resident care at the facility;

 (k) Failure to ensure that Dean Nordman received timely and appropriate custodial care, including, but not limited to, supervision, personal attention, infection control measures, and hygiene;

 (l) Failure to protect Dean Nordman from abuse and neglect; and

 (m) Failure to increase the number of personnel at the facility to ensure that Dean Nordman did not suffer the above-listed failures.

24. A reasonably careful nursing facility would not have failed to provide the care listed above. It was foreseeable that these breaches of ordinary care would result in serious injuries to Dean Nordman. With regard to each of the foregoing acts of negligence, Nursing Home Defendant acted with oppression, fraud, and/or malice or were grossly negligent by acting with wanton or reckless disregard for the health and safety of Dean Nordman.

25. Plaintiff also alleges that Nursing Home Defendant violated statutory and regulatory duties of care, the violations of which are evidence of negligence. Violations of said statutory and regulatory standards of care by Nursing Home Defendant caused in part the injuries to Dean Nordman. Dean Nordman was injured by the statutory and regulatory violations of Nursing Home Defendant and was within the class of persons for whose benefit the statutes and regulations were enacted and promulgated and who was intended to be protected by these statutes and regulations. The violations of the statutory and regulatory standards of care of Nursing Home Defendant included, but are not limited to, violation(s) of the following:

 (a) Violation(s) of KRS 209.005 et seq. and the regulations promulgated thereunder, by abuse, neglect and/or exploitation of Dean Nordman; and/or,

 (b) Violation(s) of the statutory standards and requirements governing licensing and operation of long-term care facilities as set forth by the Cabinet for Health and Family Services, pursuant to provisions of KRS Chapter 216 and the regulations promulgated thereunder.

26. As a direct and proximate result of such oppression, fraud, malice, or gross negligence, Dean Nordman suffered the injuries described herein. Plaintiff asserts a claim for judgment against Nursing Home Defendant for all compensatory and punitive damages including,

but not limited to, medical expenses, extreme pain and suffering, mental anguish, disability, disfigurement, degradation, and unnecessary loss of personal dignity, in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, plus costs and all other relief to which Plaintiff is entitled to by law.

## COUNT II – MEDICAL NEGLIGENCE

27. The Plaintiff re-alleges and incorporates by reference the allegations in every paragraph heretofore stated as if fully set out herein.

28. Nursing Home Defendant had a duty to provide the standard of professional medical care and services that a reasonably competent nursing facility acting under the same, and similar, circumstances would provide.

29. Nursing Home Defendant failed to meet the applicable standards of medical care. The medical negligence or malpractice of Nursing Home Defendant included, but was not limited to, the following acts and omissions:

(a) The overall failure to ensure that Dean Nordman:
   (1) Received timely and accurate care assessments;
   (2) Received prescribed treatment and medication;
   (3) Received appropriate diet and nutrition;
   (4) Received necessary supervision; and
   (5) Received timely intervention due to significant changes in condition;

(b) Failure to provide sufficient numbers of qualified personnel, including nurses, licensed practical nurses, certified nurse assistants and medication aides to meet the total needs of Dean Nordman throughout his residency;

(c) Failure to provide and implement an adequate nursing care plan based on the needs of Dean Nordman;

(d) Failure to provide care, treatment and medication in accordance with physician's orders;

(e) Failure to adequately and appropriately monitor Dean Nordman and recognize significant changes in his health status, and to timely notify his physician of significant changes in his health status;

(f) Failure to ensure Dean Nordman was not deprived of the services necessary to maintain his health and welfare;

(g) Failure to inform the physician and family of significant changes in condition;

(h) Failure to ensure that Dean Nordman received adequate and proper supervision and hygiene as well as infection control procedures;

(i) Failure to adequately, timely and appropriately educate and inform the caregivers at the facility of the needs, level of assistance, and prescribed care and treatment for Dean Nordman;

(j) Failure to provide proper supervision, treatment, assessment and monitoring of Dean Nordman in order to prevent the above-listed injuries;

(k) Failure to administer and secure appropriate medical care following the development and/or discovery of Dean Nordman's above-listed injuries; and

(l) Failure to increase the number of personnel at the facility to ensure that Dean Nordman not suffer the above-listed failures.

30. It was foreseeable that the breaches of care listed above would result in serious injuries to Dean Nordman. A reasonably competent nursing facility acting under the same or similar circumstances would not have failed to provide the care listed above.

31. With regard to each of the foregoing acts of professional or medical negligence, Nursing Home Defendant acted with oppression, fraud, and/or malice, or were grossly negligent by acting with wanton or reckless disregard for the health and safety of Dean Nordman.

32. As a direct and proximate result of such oppression, fraud, malice, or gross negligence, Dean Nordman suffered the injuries described herein. Plaintiff asserts a claim for judgment against Nursing Home Defendant for all compensatory and punitive damages including, but not limited to, medical expenses, extreme pain and suffering, mental anguish, disability, disfigurement, degradation, and unnecessary loss of personal dignity, in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court and

exceeding that required for federal court jurisdiction in diversity of citizenship cases, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT III – CORPORATE NEGLIGENCE

33. The Plaintiff re-alleges and incorporates by reference the allegations in every paragraph heretofore stated as if fully set out herein.

34. Upon information and belief, Dean Nordman was looking to Nursing Home Defendant's facility for treatment of his physical ailments and not merely as the situs where others not associated with the facility would treat him for his problems. There is a presumption that the treatment Dean Nordman received was being rendered through employees of Nursing Home Defendant and that any negligence associated with that treatment would render Nursing Home Defendant responsible. Nursing Home Defendant or persons or entities under its control or to the extent Nursing Home Defendant was vicariously liable through the ostensible or apparent agency of others, owed a non-delegable duty to residents, including Dean Nordman, to act with the degree and skill expected of reasonably competent medical practitioners acting in the same or similar circumstances.

35. Nursing Home Defendant owed a non-delegable duty to assist Dean Nordman in attaining and maintaining the highest level of physical, mental and psychological well-being.

36. Nursing Home Defendant owed a duty to Dean Nordman to maintain its facility, including providing and maintaining medical equipment and supplies; and hiring, supervising and retaining nurses and other staff employees.

37. Nursing Home Defendant owed a duty to Dean Nordman to have in place procedures and protocols to properly care for residents and to administer these policies through

enforcement of any rules, regulations, bylaws or guidelines, which were adopted by Nursing Home Defendant to insure a smoothly run facility and adequate resident care.

38.     Nursing Home Defendant owed a duty to Dean Nordman to provide a safe environment; to provide treatment and recovery; and to exercise ordinary care and attention for the safety of residents, including Dean Nordman, in proportion to the physical and mental ailments of each particular resident, known or discoverable by the exercise of reasonable skill and diligence. The duty of reasonable care and attention extended to safeguarding Dean Nordman from danger due to his inability to care for himself. Nursing Home Defendant had a duty to protect Dean Nordman from any danger which the surroundings would indicate might befall him in view of any peculiar trait exhibited by him or which his mental condition or aberration would suggest as likely to happen.

39.     With regard to each of the foregoing acts of negligence, Nursing Home Defendant acted with oppression, fraud, malice, or was grossly negligent by acting with wanton or reckless disregard for the health and safety of Dean Nordman.

40.     As a direct and proximate result of such oppression, fraud, malice, or gross negligence, Dean Nordman suffered the injuries described herein. Plaintiff asserts a claim for judgment against Nursing Home Defendant, for all compensatory and punitive damages including, but not limited to, medical expenses, extreme pain and suffering, mental anguish, disability, disfigurement, hospitalizations, degradation, and unnecessary loss of personal dignity, in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, plus costs and all other relief to which Plaintiff is entitled by law.

## **COUNT IV – VIOLATIONS OF LONG TERM CARE RESIDENT'S RIGHTS**

41. The Plaintiff re-alleges and incorporates by reference the allegations in every paragraph heretofore stated as if fully set out herein.

42. Nursing Home Defendant violated statutory duties owed to Dean Nordman as a resident of a long-term care facility, KRS 216.510 et seq. Plaintiff specifically references KRS 216.515 here, without limiting the import of the remaining portions of the Resident's Rights Statutes. These statutory duties were non-delegable.

43. The violations of the resident's rights of Dean Nordman include, but are not limited to, the following:

   (a)  Violation of the right to be treated with consideration, respect, and full recognition of his dignity and individuality, including privacy in treatment and in care for his personal needs;

   (b)  Violation of the right to be suitably dressed at all times and given assistance when needed in maintaining body hygiene and good grooming;

   (c)  Violation of the right to have a responsible party or family member or guardian notified immediately of any accident, sudden illness, disease, unexplained absence, or anything unusual involving the resident;

   (d)  Violation of the right to have an adequate and appropriate resident care plan developed, implemented and updated to meet his needs;

   (e)  Violation of the right to be free from mental and physical abuse and neglect; and

   (f)  Violation of the statutory standards and requirements governing licensing and operation of long-term care facilities as set forth by the Cabinet for Health and Family Services, pursuant to provisions of KRS Chapter 216 and the regulations promulgated thereunder, as well as the applicable federal laws and regulations governing the certification of long-term care facilities under Titles XVIII or XIX of the Social Security Act.

44. As a result of the aforementioned violations of the Resident's Rights Statutes by Nursing Home Defendant, pursuant to KRS 216.515(26), Plaintiff is entitled to recover actual damages in an amount to be determined by the jury, but in excess of the minimum jurisdictional

limits of this Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, as well as costs and attorney's fees.

45. With regard to the aforementioned violations of the Resident's Rights Act, Nursing Home Defendant acted with oppression, fraud, malice, or was grossly negligent by acting with wanton and reckless disregard for the rights of Dean Nordman and, pursuant to KRS 216.515(26), Plaintiff is entitled to punitive damages from Nursing Home Defendants in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, as well as costs and attorney's fees.

## CAUSE OF ACTION AGAINST ADMINISTRATOR DEFENDANT
## FACTUAL ALLEGATIONS

46. The Plaintiff re-alleges and incorporates by reference the allegations in every paragraph heretofore stated as if fully set out herein.

47. As administrator of The Good Samaritan Society – Jeffersontown, Administrator Defendant was required to be licensed by the Commonwealth of Kentucky. Administrator Defendant owed ordinary duties of care to Dean Nordman, as well as professional duties and statutory duties owed to residents by licensed, nursing home administrators in Kentucky, pursuant to the Nursing Home Administrators Licensure Act of 1970, codified as Kentucky Revised Statutes sections 216A.010 et seq.

48. As holder of a nursing home administrator's license for The Good Samaritan Society – Jeffersontown, Administrator Defendant was legally and individually responsible for the operation of the facility and the welfare of its residents pursuant to Chapter 216A of the Kentucky Revised Statutes and Title 201, Chapter 6 of the Kentucky Administrative Regulations.

49.     Administrator Defendant was also responsible for the total management of The Good Samaritan Society – Jeffersontown pursuant to federal law.

50.     Administrator Defendant's management responsibilities included ensuring that The Good Samaritan Society – Jeffersontown operated and provided services in compliance with all applicable federal, state, and local laws, regulations, and codes, and within accepted professional standards and principles.

51.     Administrator Defendant was responsible for ensuring that the facility complied with state and federal regulations related to nursing facilities. Administrator Defendant had duties to administrate the facility in a manner that enabled it to use resources effectively and efficiently to attain or maintain the highest practicable, physical, mental and psychological well–being of each resident. The nursing facility, under the leadership of its administrator, is also required to operate and provide services in compliance with all applicable federal, state and local laws, regulations and codes and with accepted professional standards and principles that apply to professionals providing services in such a facility. Administrator Defendant breached her duties of care to Dean Nordman by failing to meet these requirements.

## COUNT I – NEGLIGENCE

52.     The Plaintiff re-alleges and incorporates by reference the allegations in every paragraph heretofore stated as if fully set out herein.

53.     As administrator of The Good Samaritan Society – Jeffersontown, Administrator Defendant owed a duty to the residents of The Good Samaritan Society – Jeffersontown, including Dean Nordman, to provide services as a reasonable administrator within accepted standards for nursing home administrators.

54. Administrator Defendant breached her duties owed to the residents of The Good Samaritan Society – Jeffersontown, including Dean Nordman, during her tenure as administrator by failing to supervise nurses and nurses' aides and failing to hire sufficient nurses and nurses' aides and, as such, the nurses and nurses' aides were unable to provide Dean Nordman the care he required. The negligence of Administrator Defendant includes, but is not limited to, the following acts and omissions:

(a) Failure to monitor or provide enough qualified nursing personnel at the facility to ensure that Dean Nordman:

   (1) received timely and accurate care assessments;

   (2) received prescribed treatment and medication;

   (3) received appropriate diet and nutrition;

   (4) received necessary supervision; and

   (5) received timely intervention due to significant changes in condition;

(b) Failure to adequately screen, evaluate, and test for competence in selecting personnel to work at the facility;

(c) Failure to ensure that Dean Nordman was provided with basic and necessary care and supervision;

(d) Failure to ensure that Dean Nordman received care, treatment, and medication as prescribed or in accordance with physician's orders;

(e) Failure to ensure that Dean Nordman attained and maintained his highest level of physical, mental, and psychosocial well–being;

(f) Failure to ensure that Dean Nordman was treated with the dignity and respect that all nursing home residents are entitled to receive;

(g) Failure to provide a safe environment for Dean Nordman;

(h) Failure to take reasonable steps to prevent, eliminate and correct deficiencies and problems in resident care at the facility;

(i) Failure to discipline or terminate employees at the facility assigned to Dean Nordman that were known to be careless, incompetent, and unwilling to comply with the policy and procedures of the facility and the rules and regulations promulgated by the Cabinet for Health and Family Services;

(j) Failure to adopt adequate guidelines, policies, and procedures for:

    (1) investigating the relevant facts, underlying deficiencies, or licensure violations or penalties found to exist at the facility by the Cabinet for Health and Family Services or any other authority;

    (2) determining the cause of any such deficiencies, violations, or penalties;

    (3) establishing the method and means for correcting deficiencies or licensure violations or penalties found to exist at the facility;

    (4) determining whether the facility had sufficient numbers of personnel to meet the total needs of Dean Nordman; and,

    (5) documenting, maintaining files, investigating and responding to any complaint regarding the quality of resident care, or misconduct by employees at the facility, regardless of whether such complaint derived from a resident of said facility, an employee of the facility, or any interested person;

(k) Failure to maintain all records on Dean Nordman in accordance with accepted professional standards and practice that were complete, accurately documented, readily accessible, and systematically organized with respect to his diagnosis, treatment, and appropriate care plans of care and treatment;

(l) Failure to inform the physician and family of significant changes in condition;

(m) Failure to increase the number of personnel at the facility to ensure that Dean Nordman received timely and appropriate custodial care, including, but not limited to, bathing, grooming, incontinent care, personal attention, hygiene, feeding, and administering medications;

(n) Failure to ensure that staff provide Dean Nordman with adequate and proper infection control measures, supervision, skin care, medication administration and hygiene;

(o) Failure to ensure that staff provided proper supervision, treatment, assessment and monitoring of Dean Nordman to prevent him from suffering the above-listed injuries;

(p) Failure to ensure that staff administered and secured appropriate medical care for Dean Nordman's above-listed injuries; and

(q) Failure to increase the number of personnel at the facility to ensure that Dean Nordman not suffer the above-listed failures.

55. A reasonably careful nursing home administrator would have foreseen that the failure to provide the ordinary care listed above would result in serious injuries to Dean Nordman.

Each of the foregoing acts of negligence on the part of Administrator Defendant was accompanied by such wanton or reckless disregard for the health and safety of Dean Nordman as to constitute gross negligence.

56.     Additionally, Administrator Defendant failed to operate, manage or administer The Good Samaritan Society – Jeffersontown in compliance with federal, state, and local laws, regulations, and codes intended to protect nursing home residents, including, but not limited to:

(a) Failure to ensure compliance with rules and regulations of the Cabinet for Health and Family Services, pursuant to Chapters 216, 216B and 13A of the Kentucky Revised Statutes and the administrative regulations promulgated thereunder, and the federal minimum standards imposed by the United States Department of Health and Human Services, 42 C.F.R. sections 405.301 et seq.;

(b) Failure to ensure compliance with laws and regulations promulgated by the Cabinet for Health and Family Services to provide the minimum number of staff necessary to assist Dean Nordman with his needs;

(c) Failure to ensure compliance with law and regulations of the Board of Licensure for Nursing Home Administrators pursuant to the Nursing Home Administrators Licensure Act of 1970, Kentucky Revised Statutes sections 216A.010 et seq.;

(d) Failure to provide the necessary care and services to attain or maintain the highest practicable, physical, mental, and psychosocial well-being of Dean Nordman, and in accordance with the comprehensive assessment and plan of care created at the facility;

(e) Failure to provide sufficient nursing staff and nursing personnel to provide adequate and appropriate nursing care to Dean Nordman in accordance with the resident care plan generated at the facility;

(f) Failure to administer the facility in a manner that enabled it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental and psychosocial well-being of Dean Nordman;

(g) Failure to ensure a nursing care plan based on Dean Nordman's problems and needs was established which contained measurable objectives and time tables to meet his medical, nursing, mental, and psychosocial needs as identified in his comprehensive assessment when Dean Nordman's needs changed; and

(h) Failure to notify Dean Nordman's family and physician of a need to alter his treatment significantly.

57. Dean Nordman was member of a class intended to be protected by the above laws and regulations. The injuries alleged in Paragraph 18 resulted from events the laws and regulations were designed to prevent.

58. It was foreseeable that these breaches of statutory duties would result in serious injuries to Dean Nordman. Each of the foregoing acts of negligence per se on the part of Administrator Defendant was accompanied by such wanton or reckless disregard for the health and safety of Dean Nordman as to constitute gross negligence.

59. As a direct and proximate result of such negligent, grossly negligent, wanton, or 7reckless conduct, Dean Nordman suffered the injuries described in Paragraph 17, and Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Administrator Defendant including, but not limited to, medical expenses, extreme pain and suffering, mental anguish, disfigurement, hospitalizations, degradation, and unnecessary loss of personal dignity, in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, plus costs and all other relief to which Plaintiff is entitled by law.

## **DAMAGES**

60. The Plaintiff re-alleges and incorporates by reference the allegations in every paragraph heretofore stated as if fully set out herein.

61. As a direct and proximate result of the negligence of all Defendants as set out above, Dean Nordman suffered injuries including, but not limited to, those listed herein. As a result, Dean Nordman incurred significant medical expenses, and suffered embarrassment, and physical impairment.

62. Plaintiff seeks punitive and compensatory damages against all Defendants in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

### **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff, Dean Nordman, prays for judgment against Defendants, The Evangelical Lutheran Good Samaritan Society, Inc. d/b/a The Good Samaritan Society – Jeffersontown d/b/a The Good Samaritan Center; Christine Wideman, in her capacity as Administrator of The Good Samaritan Society – Jeffersontown; and John Does 1 through 3, Unknown Defendants, jointly and severally, as follows:

1. Damages for medical expenses, pain and suffering, mental anguish, disability, disfigurement, degradation, increased risk of harm and unnecessary loss of personal dignity, as established by the evidence;

2. For an amount of punitive damages as established by the evidence;

3. For all damages afforded under KRS 216.515;

4. For all damages afforded under KRS 314.021;

5. For any and all other damages arising from the negligent care of Dean Nordman;

6. For prejudgment and post-judgment interest;

7. For a trial by jury;

8. For attorney's fees pursuant to KRS 216.515 and all other applicable law;

9. For Plaintiff's costs herein expended; and

10. For any and all other relief to which Plaintiff may appear entitled.

Respectfully submitted,

/s/ D. Todd Varellas
D. Todd Varellas

VARELLAS & VARELLAS
249 West Short Street, Suite 201
Lexington, Kentucky  40507
(859) 252-4473
(859) 252-4476 (fax)
tvarellas@varellaslaw.com
COUNSEL FOR PLAINTIFF

20