## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION
## CIVIL ACTION NO. 3:19-CV-00279-RGJ

**DEAN NORDMAN,**                                                                                                  **PLAINTIFF**

**VS.**

**THE EVANGELICAL LUTHERAN**
**GOOD SAMARITAN SOCIETY, INC., et al.,**                                 **DEFENDANTS**

## MEMORANDUM OPINION
## AND ORDER

Before the Court are two related motions. First, Plaintiff Dean Nordman ("Nordman") has filed a motion to deem all of Defendant The Evangelical Lutheran Good Samaritan Society, Inc.'s ("Good Samaritan's") objections waived relating to its Rule 30(b)(6) deposition and to Discovery. (DN 80). This Motion has been fully briefed. Second is Good Samaritan's Motion to Hold All Pending Matters in Abeyance (DN 83). Nordman responded in opposition. (DN 84). Although Good Samaritan's time to reply has not expired, the Court will proceed with adjudication because of the time-sensitive nature of this request.[1]

### I. Background

Plaintiff Dean Nordman through his attorney in fact, Helen Nordman, filed this nursing home negligence case against Defendants Good Samaritan and Christine Wideman in April of 2019. (DN 1). Nordman claims Defendants failed to properly care for him while he was housed at their facility. (*Id.*).

---

[1] These matters have been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A). (DN 26).

The parties have struggled with cooperative discovery. The dispute presently before the Court relates to difficulties the parties encountered in scheduling Defendant Good Samaritan's Rule 30(b)(6) deposition. Each side emphatically disputes the other's recitation of operative facts.[2]

On February 12, 2021, Nordman served a Rule 30(b)(6) deposition notice duces tecum on Good Samaritan, setting the deposition for March 17, 2021, and providing a list of topics for examination and items that must be produced. (DN 80-1). Nordman did not consult with Good Samaritan on its availability as to the March 17 date but stated he was "open to moving the date to suit [Good Samaritan's] availability" (DN 82-7). Due to scheduling issues with Good Samaritan's representatives, the parties agreed to reschedule the deposition to April 14, 2021.

Five days before the deposition, Good Samaritan contacted Nordman, explaining that an unexpected conflict had arisen for their corporate designee. (DN 80-4, at p. 4). Good Samaritan stated: "we need to reschedule the deposition for another day." (*Id.*). Nordman responded that he would only agree to rescheduling the Rule 30(b)(6) deposition again if the deposition took place no later than April 23, 2021 and if Good Samaritan provided outstanding documents responsive to the duces tecum requests by April 14, 2021. (*Id.* at p. 3).

Good Samaritan did not respond to Nordman's proposal until April 13, 2021, the day before the previously scheduled deposition. (*Id.* at p. 2). Good Samaritan indicated April 23 wouldn't work but that their two corporate representatives would be available on April 26. (*Id.*). As to the outstanding duces tecum requests, Good Samaritan explained that the requests were nearly identical to Nordman's prior discovery requests, which had already been completed and provided to Nordman months ago. (*Id.*).

---

[2] Good Samaritan's Response states that Nordman's Motion "misrepresents the history of scheduling of the corporate representative deposition and attempts to capitalize from Plaintiff's routine grandstanding in the conduct of this litigation." (DN 81, at p. 1). Nordman asserts, in reply, that Good Samaritan "spends most of their response brief misstating the facts and unnecessarily attacking the Plaintiff . . ." (DN 82, at p. 2).

Later that afternoon, Nordman replied to Good Samaritan's email and objected to rescheduling the deposition for April 26, since that was the last day of the parties' discovery period. (*Id.* at p. 1). Nordman instead proposed April 16 or April 20 for the deposition and again demanded Good Samaritan produce documents responsive to its discovery requests and duces tecum requests. (*Id.*). At 5:51 PM, Good Samaritan emailed Nordman, reiterating that its corporate designees were "not available tomorrow [April 14] due to conflicts, as was communicated to [Nordman] last week, and therefore they will not be appearing for a video deposition." (DN 80-5.). Good Samaritan once more suggested the deposition be rescheduled to April 26. (*Id.)*. To accommodate Nordman's concerns with the deposition occurring on the final day of discovery, Good Samaritan also suggested a short extension of the discovery deadline. (*Id.*).

The next day, April 14, 2021, Nordman sent Good Samaritan a Zoom invitation for "today's FRCP 30(b)(6) deposition of Defendant[.]" (DN 80-6). Nordman sent this email at 12:37 PM, twenty-three minutes before the previously scheduled deposition's start time. Good Samaritan immediately responded:

> Pursuant to my email that was sent to you last week, and reiterated in a follow up email yesterday evening, Good Samaritan's corporate designees are not available for today's FRCP (30)(b)(6) corporate deposition due to conflicts, and therefore needed to be rescheduled. This is now the third time I have communicated to you that they are available on **April 26th.** Please advise on rescheduling the FRCP (30)(b)(6) deposition for **April 26th** as you have not indicated to date there is any conflict to do so.

(*Id.*). Six minutes later, Nordman replied: "As the Plaintiff previously advised in writing, the deposition would only be rescheduled if two conditions were met, but neither of the two conditions have been met or agreed to by Defendants. Therefore, the deposition will go forward." (*Id.*). As promised, Nordman went forward with the deposition and incurred costs in doing so.

Several days later, Nordman filed two motions related to this series of events: (1) motion

3

to deem all objections to Rule 30(b)(6) deposition and to producing accompanying documents waived; and (2) motion for extension of time to complete discovery. The Court issued an Order, denying the motions without prejudice based on Nordman's failure to abide by the Scheduling Order's provision that "no motion pertaining to discovery may be filed without first having a joint telephonic conference with Magistrate Judge Edwards arranged through her chambers[.]" (DN 67). The Court scheduled an in-person hearing to address the discovery issues and stayed the discovery deadline. (*Id.*).

During the in-person hearing, the Court noted that communication seemed to be a critical problem for both sides in scheduling Good Samaritan's Rule 30(b)(6) deposition. (*See* DN 74). The Court ordered the parties to confer to see whether May 27 or May 28 would work for the deposition and, if those dates didn't work, the parties would need to find an agreeable deposition date no later than June 8, 2021. (*Id.*). The Court extended the discovery deadline to July 2, 2021 to give Nordman time to review documents and transcripts after the Rule 30(b)(6) deposition. (*Id.*).

After this discussion, Nordman attempted to renew his motion to deem all of Good Samaritan's objections to the Rule 30(b)(6) deposition waived. (*Id.* at pp. 2-3). The undersigned indicated she believed this issue was resolved when she required the parties to find an agreeable date for the deposition. (*Id.* at p. 3). Nordman remained stalwart in his belief that any objection, including objections based on privilege, relating to documents produced for the Rule 30(b)(6) deposition, and during the deposition itself should still be waived based on Good Samaritan's conduct. (*Id.*). The Court declined to rule on this issue, instead requiring the parties to make good faith efforts at resolution and to file a joint status report by May 21, 2021. (*Id.*).

The parties' joint status report reflected that the Rule 30(b)(6) deposition was scheduled for May 28, 2021, but that the parties could not resolve Nordman's motion to deem objections

4

waived. (DN 78). The Court, therefore, permitted Nordman to refile his motion and set an expedited briefing schedule. (DN 79).

Shortly after Nordman's motion to deem objections waived was fully briefed, Defendants filed a motion to hold all pending matters in abeyance pending the outcome of an upcoming mediation on July 27, 2021. (DN 83). Nordman responds that his motion should not be stayed and requests the Court rule on this issue before the mediation because he cannot properly evaluate settlement of the case without a ruling. (DN 84).

## II. Analysis

Nordman seeks evidentiary sanctions based on Good Samaritan's failure to produce corporate representatives at the Rule 30(b)(6) deposition on April 14, 2021 and Good Samaritan's failure to produce responsive documents to his subpoena duces tecum requests. (DN 80). Good Samaritan's behavior, according to Nordman, warrants waiver of any and all objections that Good Samaritan has asserted, including objections relating to documents produced pursuant to Rule 34 discovery requests, objections relating to documents produced pursuant to the Rule 45 subpoena requests, and objections during the deposition itself. Good Samaritan counters that Nordman's Motion is moot because the Rule 30(b)(6) deposition has now been completed and all responsive, non-privileged documents have been produced.[3]

### A. Good Samaritan's Failure to Appear at the April 14, 2021 Deposition

Nordman asserts that Good Samaritan should have filed a protective order if it was objecting to or didn't want to appear for the Rule 30(b)(6) deposition. Good Samaritan responds

---

[3] As Nordman points out in his reply, Good Samaritan did not file its response to Nordman's motion within the Court-ordered deadline. Nordman claims that Good Samaritan's late response should not be considered. Although Good Samaritan clearly missed the Court-imposed deadline, it was an expedited deadline that shortened the typical twenty-one-day response time under Local Rule 7.1. Good Samaritan filed its response twenty-one days after Nordman refiled his motion. This harmless mistake does not warrant the striking of Good Samaritan's response. However, Good Samaritan is warned that court-imposed deadlines must be complied with and future mistakes of this nature will not be tolerated.

that it was not seeking to avoid compliance with the Rule 30(b)(6) deposition notice but merely sought to postpone the deposition to accommodate its unavailable witness. Requesting an extension for a deposition, Good Samaritan claims, it not tantamount to an objection.

Federal Rule of Civil Procedure 37(d) governs sanctions for a party's failure to appear for a Rule 30(b)(6) deposition. The Court "may, on motion, order sanctions" if "a party or . . . a person designated under Rule 30(b)(6) . . . fails, after being served with proper notice, to appear for that person's deposition[.]" Fed. R. Civ. P. 37(d)(1)(A)(i). Such a failure to appear for deposition "is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)." *Id.* at (d)(2). The Court may award sanctions for this conduct, including any type of sanction listed in Rule 37(b)(2)(A)(i)-(vi), and "[i]nstead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Id.* at (d)(3).

Nordman cites to case law holding that motions for protective order are required when a party objects to the scope of the Rule 30(b)(6) deposition and holding that a corporate witnesses' failure to appear cannot be justified by claiming the discovery sought is objectionable. These cases are distinguishable from the circumstances here. Good Samaritan did not refuse to appear for its Rule 30(b)(6) deposition or object to the substance of the Rule 30(b)(6) deposition. It simply sought to reschedule the deposition due to the unavailability of its witness. It was not necessary for Good Samaritan to file a motion for protective order for trying to informally reschedule its Rule 30(b)(6) deposition.[4]

---

[4] Nordman also cites to two cases for the proposition that a party cannot cancel a deposition unilaterally. (DN 80, at p. 4 (citing *Pacific Elec. Wire & Cable Co., Ltd. v. Set Top Intern. Inc.*, 2005 WL 2036033, at *7 (S.D.N.Y. Aug.

6

Good Samaritan's failure to appear for the Zoom deposition on April 14, 2021 was also substantially justified. Good Samaritan communicated its representative's unavailability due to an "unexpected conflict" to Nordman on April 9, 2021, five days before the scheduled deposition. On the day before the deposition, Good Samaritan again communicated that "our corporate designees are not available tomorrow due to conflicts, as was communicated to you last week, and therefore, they will not be appearing for a video deposition." Despite Good Samaritan's representations of unavailability, Nordman issued a Zoom invitation for the April 14, 2021 deposition twenty-three minutes before the video deposition was previously scheduled to begin. And, despite Good Samaritan's prompt response, reiterating its corporate representatives' unavailability that day, Nordman declared the deposition would go forward as previously scheduled. Having to reschedule the April 14, 2021 deposition again was frustrating on Nordman's end, but Good Samaritan gave them sufficient warning and attempted to reschedule the deposition as soon as practicable for their representatives.

According to Nordman, Good Samaritan pushing the deposition back prejudiced him because he is an "ailing nursing home resident . . who should be able to benefit from the resolution of this case during his lifetime." (DN 82, at p. 3). Quickly moving this case forward is certainly a compelling interest. But poor communication from both parties caused the delays in effectuating Good Samaritan's Rule 30(b)(6) deposition. For instance, Good Samaritan should not have waited four days after notifying Nordman of their corporate representative's unavailability to follow up in providing available dates. Good Samaritan also failed to provide more specific reasons for its

---

23, 2005); *Smith v. BCE, Inc.*, 2005 WL 1523354, at *1 (W.D. Tex. June 22, 2005)). Good Samaritan did not unilaterally cancel its deposition. Rather, it attempted to reschedule the deposition with Nordman's assistance. Moreover, the facts of *Pacific Electric* and *Smith* are distinguishable. In *Pacific Electric*, the plaintiff's deposition of several defendants violated a court order requiring consent of the other parties or the court before altering the deposition schedule. 2005 WL 2036033, at *3. In *Smith*, the court granted a motion to compel in part based on defendants' unilateral decision to cancel corporate depositions due to the effect of plaintiff filing a motion requesting leave to amend his complaint. 2005 WL 1523354, at *1.

corporate representative's unavailability and to explain why it could not produce the other corporate designee on the April 14 date.[5] On the other hand, Nordman should not have ignored Good Samaritan's attempts to reschedule the deposition to April 26 and offer to briefly extend the discovery deadline. And Nordman should not have waited until twenty-three minutes before the previously scheduled deposition's start time to inform Good Samaritan that he would be going forward with the Rule 30(b)(6) depositions despite Good Samaritan's previously communicated unavailability. The Court understands Nordman's desire to complete the Rule 30(b)(6) deposition as quickly as possible; however, Nordman was not without fault in these delays.

Because both parties acted deficiently with respect to scheduling and completing Good Samaritan's Rule 30(b)(6) deposition, the Court does not find sanctions are warranted against Good Samaritan, especially not evidentiary sanctions of the caliber that Nordman seeks. Good Samaritan's Rule 30(b)(6) deposition has now been completed. Waiving any objections that Good Samaritan may have asserted during this deposition is neither appropriate nor proportional under these circumstances.

### B. Good Samaritan's Rule 34 and Rule 45 Production of Documents

Nordman maintains that Good Samaritan failed to object to the subpoena's document requests within fourteen days of the subpoena issuing, as required by Rule 45. Nordman also claims Good Samaritan has failed to appropriately respond to its Rule 34 discovery requests within thirty days as required by Rule 34(b)(2)(A). According to Nordman, Good Samaritan's failure to file a motion to quash the subpoena or a motion for protective order requires waiver of all its objections to producing documents, including privilege.

---

[5] Good Samaritan attaches an affidavit of its corporate representative, Gail Brooks, to its Response. (DN 81-1). Her affidavit explains that on or around April 9, 2021, she had to travel to assist and care for her mother after her mother sustained a fall. (*Id.*). Nordman alleges that Good Samaritan never provided this reason for Brooks' inability to appear and that it first learned of these circumstances during motion practice.

Good Samaritan clarifies that it filed a motion for protective order on February 22, 2021, relating to the limited documents it was previously withholding from its Rule 34 production. The parties, however, eventually agreed to a confidentiality agreement without court intervention (*see* DN 77), and Good Samaritan claims it produced all documents pursuant to such agreement. Good Samaritan likewise asserts that it has never attempted to avoid compliance with the subpoena's requests, which restate Nordman's Rule 34 requests for production. Rather, Good Samaritan attributes any delay in responding to it having to review "tens of thousands of documents" for relevance and privilege after the respective deadlines because Nordman refused to agree on search terms and connectors for electronically stored information. Good Samaritan believes any dispute over production of documents is moot because it has produced all responsive and non-privileged documents pursuant to the parties' agreed protective order.

Nordman's Reply construes Good Samaritan's Response as admitting that another reason they did not produce a corporate representative for the April 14 deposition was because they were unprepared and unable to timely produce the documents requested in Nordman's notice. Nordman further argues this motion is not moot because Good Samaritan concedes that they reviewed 6,200 documents but only produced 959 to Nordman and produced two untimely and insufficient privilege logs.

Federal Rule of Civil Procedure 45 directs the enforcement of subpoenas. Under subsection (d)(2), a person commanded to produce documents pursuant to subpoena may file written objections to such command "before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2). A person withholding subpoenaed information under a claim of privilege must expressly claim privilege and "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing

9

information itself privileged or protected, will enable the parties to assess the claim." *Id.* at (e)(2)(A)(1)-(2).

Requests for production of documents served during discovery fall under Federal Rule of Civil Procedure 34. Subsection (b)(2)(A) of this Rule provides that the responding party has thirty days to provide written responses. Fed. R. Civ. P. 34(b)(2)(A). Objections to such requests must be specific and "state whether any responsive materials are being withheld on the basis of that objection." *Id.* at (b)(2)(C).

As to Nordman's Rule 34 requests, Good Samaritan timely produced responsive and nonprivileged documents except for two categories. First, Good Samaritan requested that its proprietary business information be covered by a protective order. Second, for email communications, Good Samaritan requested Nordman assist with identifying appropriate search terms. These issues persisted for several months before the parties ultimately sought court intervention. Eventually Nordman agreed to enter into the agreed protective order requested by Good Samaritan. (*See* DN 77). And, although the parties struggled to agree on search terms, Good Samaritan eventually went ahead with those suggested by Nordman, which allegedly required it to review "tens of thousands of emails for responsiveness and privilege."

Good Samaritan asserts that Nordman's Rule 45 subpoena requests were identical to his Rule 34 requests for production. Nordman does not dispute this. It follows that Good Samaritan's basis for its ongoing Rule 34 production, i.e., the hundreds of ESI documents being reviewed, was equally applicable to the Rule 45 requests. Good Samaritan's email from April 13 reflects this: "[A]side from our future supplementation of the ESI that is currently under review, [we] do not anticipate any further responsive documents being produced in response to your Notice." (DN 80-4). The record does not demonstrate Good Samaritan unilaterally refusing to produce responsive

10

documents or otherwise attempting to avoid its obligations under either Rule. Instead, Good Samaritan indicated its belief that all responsive documents had been produced other than the ESI documents that it was currently reviewing for responsiveness and privilege.

To undercut Good Samaritan's assertions that all responsive, non-privileged documents have now been produced, Nordman points out in his reply that Good Samaritan only produced 959 of 6,200 reviewed documents. However, this ratio of produced documents versus reviewed documents does not automatically create a presumption that more responsive documents exist. Nordman does not provide additional support for this argument.

Nordman's Reply also highlights deficiencies in Good Samaritan's privilege log in attempting disprove Good Samaritan's complete production. Allegedly Good Samaritan did not provide a privilege log containing a summary of the documents being withheld until May 27, 2021, the day before the Rule 30(b)(6) deposition took place. And, even then, the privilege reason for each of the 386 entries is identical: "Quality Assurance-protected from disclosure by 42 U.S.C. § 1396r(b)(1)(B) and 42 CFR 483.75(o)(3)." (DN 82-3). Nordman asserts this is "at best a limited privilege and many of the documents claimed by [Good Samaritan] are likely not privileged at all." (DN 82, at p. 4) (citing *Henderson Cnty. Health Care Corp. v. Wilson*, 612. S.W.3d 811 (Ky. 2020); *State ex rel Boone Retirement Ctr., Inc. v. Hamilton*, 946 S.W.2d 740 (Mo. 1997); *Brown v. Sun Healthcare Grp., Inc.*, 2008 WL 1751675 (E.D. Tenn. 2008)).

Nordman, however, did not raise any issue regarding Good Samaritan's privilege log in his Motion. He instead makes conclusory arguments that many documents listed in the privilege log "are likely not privileged at all" for the first time in his reply. Generally, arguments or issues "raised for the first time in a reply brief are not properly before the Court[,]" as they prevent the non-moving party from having a fair opportunity to respond. *Al Maqablh v. Heinz*, No. 3:16-CV-

11

289-JHM-CHL, 2018 WL 4186420, at *3 (W.D. Ky. Aug. 31, 2018) (*quoting United States v. Bennett*, No. 3:17-cr-00032, 2017 WL 5339905, at *5 n. 2 (W.D. Ky. Nov. 13, 2017) (add' citations omitted)). The Court, therefore, declines to review the sufficiency of the 386 entries in Good Samaritan's amended privilege log and will only broadly consider Good Samaritan's privilege log in determining whether evidentiary sanctions are appropriate.

Turning again to Nordman's requested sanctions, Nordman claims the "prevailing rule" for a party's failure to file a timely objection requires the waiver of any objections. To establish this allegedly prevailing rule, Nordman relies on cases from other districts and circuits spanning from 1989 to 2006. These cases essentially state that where a party seeks to avoid compliance with a deposition notice or a discovery request, it must raise an objection in a timely manner or else the objection is considered waived.[6]

Again, Good Samaritan did not seek to avoid compliance with the deposition notice or the Rule 34 requests. Good Samaritan provided responsive documents and only delayed in producing certain documents due to the voluminous nature of the ESI searches required by Nordman. And Good Samaritan made Nordman aware of these delays throughout the discovery period, most notably when it was trying to reschedule the Rule 30(b)(6) deposition. Good Samaritan's delay in completing its privilege log is also likely attributable to its ongoing ESI searches. The extreme sanction of waiver of any and all objection that Good Samaritan asserted in the Rule 30(b)(6) deposition, in responding to the Rule 34 and Rule 45 requests, or otherwise asserted in the litigation is not warranted here.

---

[6] These cases cited by Nordman in footnote 6 in his Motion again are factually distinguishable from the circumstances here.

## **ORDER**

**IT IS THEREFORE ORDERED** that Plaintiff Dean Nordman's Motion for Court to Deem All Objections Waived (DN 80) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Good Samaritan's Motion to Hold All Pending Matters in Abeyance (DN 83) is **DENIED as moot.**

Regina S. Edwards, Magistrate Judge
United States District Court

July 22, 2021

Copies:    Counsel of Record